```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS


JOSE RAFAEL MARRERO           )
GARCIA,                       )
        Plaintiff             )
                              )
              v.              )  C.A. 13-cv-30044-MAP
                              )
CAROLYN COLVIN,               )
Commissioner of the Social    )
Security Administration,      )
        Defendant             )
```

### MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR ORDER AFFIRMING COMMISSIONER
(Dkt. Nos. 17 & 28)

February 3, 2014

PONSOR, U.S.D.J.

### I.   INTRODUCTION

Plaintiff, Jose Rafael Marrero Garcia, has appealed the final decision of Defendant, Carolyn Colvin, Commissioner of the Social Security Administration, denying him Social Security Disability Insurance Benefits and Supplemental Security Income.  Counsel appeared for argument on the parties' cross-motions on January 8, 2014, and the court indicated it would deny Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 17), and allow Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 28).  This memorandum will summarize the court's reasoning and order entry of judgment for Defendant.

## II. FACTS

Plaintiff was forty-two years old at the onset of his alleged disability and forty-seven when the ALJ denied his claim for benefits. He alleged disability due to fibromyalgia, muscle spasms, back problems, a herniated disc, major depression, and an anxiety disorder. Plaintiff had a ninth grade education and was previously employed as a baker's helper. (SSA Admin. R. of Soc. Sec. Proceedings 38, Dkt. No. 13 (hereinafter A.R.).) He left work in July 2009, because of back problems and arm pain. (Id.)

### A. Medical Conditions[1]

Plaintiff first presented for psychotherapy in September 2009, with Dr. Eduardo Bustamante. (A.R. 365.) Plaintiff was diagnosed with Major Depressive Disorder and was assigned a Global Assessment of Functioning ("GAF") score of 50.[2] (A.R. 367-70.)

In February 2010, Plaintiff saw Dr. Abel Gonzalez for medication management. (A.R. 593.) Plaintiff complained of worsening depression and was again diagnosed with Major

---

[1] Although Plaintiff alleged both physical and mental disabilities, the parties agreed that the case hinges on Plaintiff's mental ailments. The court will therefore focus its attention on those impairments.

[2] A "GAF" score between 41-50 indicates "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision 2000)(hereinafter "DSM-IV").

Depressive Disorder.  (Id.)  He was assigned a GAF score of 50 and prescribed anti-depressants, including Zoloft and Ambien.  (A.R. 593 & 595.)

Throughout 2010, Plaintiff followed up with Dr. Gonzalez.  In March, he reported difficulty sleeping, continued depression, irritability, and social isolation.  (A.R. 591.)  The doctor increased Plaintiff's dosage of both medications and also prescribed Clonidine.  (A.R. 592.)  One month later, the doctor again increased Plaintiff's dosage.  (A.R. 589.)  On July 8, 2010, Plaintiff continued to report poor motivation, energy, sleep, and appetite, though he acknowledged that he had only been partially adherent to his medication regimen.  (A.R. 585-86.)  In response, the doctor discontinued Clonidine and prescribed Remeron.  (A.R. 586.)

Although Plaintiff's mental health improved in 2010, his progress was inconsistent.  For instance, on October 13, 2010, Plaintiff reported mild improvement after he moved to a new apartment and followed his medication regimen.  (A.R. 579.)  However, in January 2011, he reported low energy and appeared to have only a limited response to the medication.  (A.R. 571-72.)  In March of that year, Plaintiff reported improved stress management, relationships, and conflict resolution.  (A.R. 568-69.)  Then, in June 2011, Plaintiff told his doctor that he was considering going back to work.

(A.R. 561.) Plaintiff continued to see Dr. Gonzalez and demonstrated slow, inconsistent development.

B. <u>Disability Evaluations</u>

Plaintiff underwent a consultive examination with Dr. Teena Guenther in December 2009. They discussed Plaintiff's work history, and he described the symptoms of his depression. (A.R. 376.) The doctor concluded that Plaintiff's intelligence was below average, his insight was limited, and his judgment was "fair." (A.R. 377.) Further, she believed that Plaintiff would have difficulty focusing on tasks and interacting with coworkers and supervisors. (A.R. 378.) He would also likely be distracted at work. She ultimately diagnosed Plaintiff with Mood Disorder Not Otherwise Specified ("NOS"), and Anxiety Disorder NOS. (<u>Id.</u>) Moreover, she provided a provisional diagnosis of Personality Disorder with Borderline Traits. (<u>Id.</u>) On the GAF scale, she assigned Plaintiff a score of 52.[3] (<u>Id.</u>)

In addition to the consultive examination, several non-treating physicians analyzed Plaintiff's abilities. On December 14, 2009, Dr. Ginette Langer reviewed Plaintiff's mental impairments. She concluded that Plaintiff had a mild restriction in daily activities and social functioning and had moderate difficulties in maintaining concentration,

---

[3] A GAF score between "51-60" indicates "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

<sub>-4-</sub>

persistence, and pace. (A.R. 393.) On Plaintiff's behalf, Dr. Langer completed a Residual Functional Capacity ("RFC") assessment. (A.R. 397-99.) She concluded that Plaintiff could understand and remember simple instructions, could concentrate, maintain attention, keep pace, and be socially appropriate in occasional interactions at work. (A.R. 399.) On May 16, 2010, Dr. Lawrence Langer reviewed the record and affirmed Dr. Ginette Langer's view. (A.R. 430.)[4]

C. <u>ALJ Hearing</u>

Plaintiff, represented by counsel, appeared on January 4, 2012, for a hearing before ALJ Michael Breton. At the hearing, Plaintiff testified to both his physical and mental impairments. He testified that he suffered from anxiety and depression, saw a therapist weekly, took psychotropic medications, and visited a psychiatrist for medication management. (A.R. 48.) He discussed his difficulties in public, including a general feeling that someone is constantly trying to "catch" him. (A.R. 49-50.) Plaintiff also described his memory lapses, his trouble focusing, and

---

[4] As to his physical symptoms, Dr. Erik Purins, on November 20, 2009, found Plaintiff capable of lifting, and carrying twenty pounds occasionally and ten pounds frequently. (A.R. 349-50.) The doctor also found Plaintiff capable of standing or walking for roughly six-hours in an eight-hour work day. (<u>Id.</u>) Furthermore, he was able to occasionally stoop, crouch, and climb. (<u>Id.</u>) The doctor recommended that Plaintiff avoid concentrated exposure to temperature extremes or hazards. (A.R. 352.) On May 5, 2010, Dr. F. Yamamoto concurred with this assessment. (A.R. 429.)

the impact the problems have on his ability to sleep.  (A.R. 48-52.)[5]

A vocational expert also testified at the hearing.  The ALJ asked the expert whether any jobs were available for someone with Plaintiff's age, education, and work experience, but who was limited to light work with specific restrictions.  (A.R. 53-54.)  The restrictions included: "no hazards or dangerous machinery."  (Id.)  The expert concluded that the hypothetical individual would be unable to perform Plaintiff's prior work, but could be employed as a cleaner, a cafeteria attendant, or a packer.  (A.R. 54.)  The ALJ then asked what jobs were available if the same hypothetical person were limited to minimal interaction with the general public.  (Id.)  Although the individual would be able to perform the same jobs, the expert opined, only half as many jobs would be available.  (Id.)  Finally, the ALJ asked what work was available if the hypothetical individual were absent four or more days a month.  (Id.)  The expert

---

[5] Plaintiff also testified about his physical symptoms. He described his lower back pain, the sensation of pins and needles in the backs of his leg and feet, and the pain and swelling in his wrists, elbows, shoulders, ankles and knees. (A.R. 43-44.)  He testified to his treatment, which has included steroid injections, physical therapy, aqua therapy, and pain medication.  (A.R. 44-45.)  Due to this pain, Plaintiff said that he could only sit and stand for approximately thirty minutes, could work for the same, and had difficulty using stairs.  (A.R. 47-48.)

opined that no such work existed under that condition. (<u>Id.</u>)

D.   <u>ALJ Decision</u>

The ALJ followed the five-step sequential disability determination.  20 C.F.R. § 416.920.  At step one, despite Plaintiff's part-time work through July 2009, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date of his disability.  (A.R. 17-18.)  At step two, he classified Plaintiff's fibromyalgia, degenerative disc disease, depressive disorder, mood disorder, and anxiety disorder as severe impairments.  (A.R. 18-19.)  At step three, the ALJ determined that Plaintiff's impairments, or combination thereof, did not meet or medically equal any entry on the Listing of Impairments.  (A.R. 19.)  Moving to step four, the ALJ found that Plaintiff had a RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b),[6] with the following limitations:

---

[6] "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). It may also require a good deal of walking, standing, or sitting with some light pushing or pulling of arm or leg controls.

> **The claimant is limited to no more than occasional stooping, crawling, and climbing of ladders; he is limited to no more than occasional exposure to hazards/dangerous machinery. The claimant must avoid exposure to extreme heat and extreme cold. He is limited to simple, unskilled tasks, which require limited concentration.**

(A.R. 20.)

Based on these limitations, at step four, the ALJ deemed Plaintiff unable to perform his past relevant work. (A.R. 24.) However, at step five, the ALJ found Plaintiff capable of doing work that existed in significant numbers in the national economy, such as a cleaner, a cafeteria attendant, and a packer. (A.R. 24-26.) Thus, the ALJ concluded that Plaintiff was not disabled and, therefore, not entitled to benefits.

### III. DISCUSSION

#### A. Standard of Review

An ALJ's decision will only be overturned if it is not "supported by substantial evidence and based on the correct legal standard." 42 U.S.C. § 405(g); Manso-Pizzarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st. Cir. 1996). Because the responsibility for weighing conflicting evidence belongs to the Commissioner, Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001), her findings "as to any fact, if supported by substantial evidence, shall be conclusive." §

405(g). Substantial evidence means that "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citations omitted).

B. <u>Inconsistency Between a Hypothetical Question Posed to the Vocational Expert and the ALJ's RFC Determination</u>

The court can easily dispose of Plaintiff's first contention. He argues that the ALJ presented a hypothetical question to the vocational expert that was "materially less restrictive" than the limitation listed in the final RFC determination. Specifically, the ALJ asked the vocational expert a hypothetical that included the restriction "<u>no</u> hazards or dangerous machinery." (A.R. 53-54.)(emphasis added). However, in the RFC determination, the ALJ concluded that Plaintiff was limited to "no more than <u>occasional</u> exposure to hazards or dangerous machinery." (A.R. 20.)(emphasis added). This inconsistency, in his view, warrants reversal. See Arocho v. Sec'y of Health & Human Serv., 670 F.2d 374 (1st Cir. 1982).

Although Plaintiff correctly highlights the inconsistency, the limitation in the RFC is <u>less</u> restrictive than the condition posed in the hypothetical at the hearing. If an individual who is <u>completely</u> precluded from exposure to a specified condition is found capable of performing certain

jobs, it necessarily follows that the same person is capable of working in jobs with only <u>occasional</u> exposure.  <u>See</u> <u>Warren v. Astrue</u>, No. 10-cv-30053-MAP, 2011 WL 31292, at *5 (D. Mass. Jan. 4, 2011)("In any event, the hypothetical posed to the vocational expert was more restrictive and, thus, more favorable to Plaintiff").  Simply put, the distinction here is inconsequential and does not warrant reversal.

C.   <u>Substantial Evidence</u>

Plaintiff's main argument is that the ALJ should have included additional limitations in Plaintiff's RFC.  In his view, the ALJ improperly focused on Plaintiff's physical disabilities, and as a result, downplayed his mental restrictions.  The ALJ's failure to include additional cognitive restrictions in his hypothetical, Plaintiff contends, demonstrates the inadequacy of the ALJ's analysis.[7]

The flaw in Plaintiff's argument is that at he is essentially requesting that the court review the ALJ's decision <u>de novo</u>, rather than under the weighty "substantial evidence" standard.  Although it might have been possible for

---

[7] Plaintiff briefly mentions that the ALJ failed to consider the combined effect of Plaintiff's physical and mental impairments on his ability to work. However, in merely mentioning the point in a perfunctory manner, rather than examining it in any meaningful way, Plaintiff has waived this argument. <u>See</u>, <u>e.g.</u>, <u>Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.</u>, 421 F.3d 1, 6 (1st Cir. 2005). Even if the argument were not waived, it is still unavailing as the ALJ <u>did</u> consider the combination of impairments. <u>See</u> (A.R. 19.)

a neutral arbiter to find Plaintiff disabled, more than enough evidence in this record justifies the opposite conclusion.

Here, the ALJ relied on Plaintiff's medical treatment notes, the RFC assessment of Dr. Ginette Langer, and Plaintiff's treatment plan to reach his determination. The ALJ also looked at Plaintiff's stated abilities, including: his ability to live alone, his ability to keep in contact with friends, and perhaps most importantly, his ability to work a year and a half into his alleged disability. Finally, the ALJ looked at what was not in the record -- an affirmative statement by a doctor describing physical or mental conditions that amounted to a disability. Dumas v. Schweiker, 712 F. 2d 1545, 1553 (2d Cir. 1983)(noting that the Commissioner is entitled to look at what is in the record, and what is absent from it). This evidence was more than substantial to provide a basis for the ALJ's conclusion that Plaintiff was capable of working.

Another shortcoming in Plaintiff's argument is that he asserts that "additional limitations" should have been included in the RFC without detailing in any way what these limitations were. He therefore fails to meet his burden of proof on this point. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (noting that the burden of proof in challenges to administrative findings generally rests on the petitioner).

**Ultimately, the ALJ relied on substantial evidence to reach his decision finding Plaintiff capable of work. As such, this court has no option but to affirm the ALJ's decision.**

## IV. CONCLUSION

**For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 17) is hereby DENIED, and Defendant's Motion for Order Affirming Decision of the Commissioner (Dkt. No. 28) is hereby ALLOWED. The clerk will enter judgment for Defendant, and this case may now be closed.**

**It is So Ordered.**

/s/ Michael A. Ponsor
**MICHAEL A. PONSOR**
**U. S. District Judge**
